## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSE A T. JR.,**

      **Plaintiff,**

**v.**                                                    **No. 1:24-cv-00246-JHR**

**LELAND DUDEK,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND [DOC. 13]

Before the Court is Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 13]. The Commissioner of the Social Security Administration filed a response [Doc. 19] and Plaintiff replied [Doc. 23]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to the undersigned resolving Plaintiff's motion to remand. [Doc. 4]. The Court has reviewed the parties' briefing, the administrative record, [Doc. 10] ("AR"), and applicable law. The Court **GRANTS** Plaintiff's motion to remand and **REMANDS** the matter for further proceedings.

## I.      PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on March 20, 2019. (AR 106). The Commissioner denied his initial application on June 19, 2019, and again on November 7, 2019, upon reconsideration. (AR 135, 145). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 153). After the first hearing was held on November 10, 2020, ALJ Stephen Grontis found Plaintiff not disabled. (AR 14–34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner and prompting Plaintiff to file an appeal in the District of New Mexico on August 18, 2021. (AR 1–4, 967–70).

On August 30, 2022, U.S. Magistrate Judge Fashing reversed the Commissioner's decision and remanded the matter due legal error arising from the ALJ discounting the opinion of consulting psychologist Michael Mash, Ph.D. (AR 971, 987). Judge Fashing found two main errors. First, the ALJ failed to consider Dr. Mash's treatment notes or other evidence supporting his opinion that Plaintiff had significant limitations from mental health issues. (AR 983) ("failure to examine the connection between Dr. Mash's treatment records and his medical opinion is error"). She cited records denoting poor mental health symptoms as examples of such unexamined evidence. *Id.*

Second, the ALJ improperly discounted Dr. Mash's opinion based on a "mistake of fact"; the ALJ stated Dr. Mash evaluated Plaintiff in 2018 but in fact he assessed Plaintiff in 2019. *Id.* Judge Fashing explained this mistaken belief in year was harmful because it "resulted in the misunderstanding that Plaintiff was improving around the time of the alleged onset date and months after Dr. Mash's assessment" when treatment notes supported that Plaintiff struggled with his mental health "well after" the alleged onset date. (AR 985). She summarized that "[g]iven the ALJ's mistaken belief that Dr. Mash's opinion was from August 2018 rather than August 2019, and the evidence that [Plaintiff's] symptoms worsened after August 2019" the ALJ's evaluation of Dr. Mash's opinion was not supported by substantial evidence and warranted remand. (AR 986).

The Appeals Council then sent the case to a different ALJ for further proceedings consistent with Judge Fashing's order. (AR 998–1000). Plaintiff appeared before ALJ Michelle Lindsay on September 6, 2023, for a rehearing at which a vocational witness also testified. (AR at 901-33). The ALJ again found Plaintiff not disabled in her written decision dated December 11, 2023. (AR 872–90). Plaintiff timely appealed the ALJ's unfavorable decision on March 11, 2024. [Doc. 1].

## II.    <u>STANDARD OF REVIEW</u>

When a party appeals an adverse disability decision the court must affirm if the ALJ applied correct legal standards and supported his factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense by setting aside technicalities in favor of whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure by the ALJ to follow legal standards will warrant reversal under appropriate circumstances "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). At the same time, some errors may be harmless if the ALJ's findings are sufficiently thorough and supported by the record. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for the ALJ's conclusion—more than a scintilla but less than a preponderance of the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the whole record to determine if the ALJ met the standard including any evidence that may undercut or detract from his findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may neither "reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The reviewing court must affirm, even if it would resolve the matter differently, unless the record overwhelms the ALJ's factual findings or her decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## III.    <u>THE COMMISSIONER'S FINAL DECISION</u>

A claimant who seeks disability benefits under the Social Security Act must demonstrate that he cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v).[1] 1 Those five steps address (1) whether the claimant is still engaged in substantial gainful activity; (2) whether the claimant is suffering from any impairments significantly limiting his ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a listed disabling impairment; (4) whether the claimant's residual functional capacity ("RFC"), or his ability to sustain work-related activities regularly in a work setting, would preclude him from his past relevant work, and finally; (5) whether the claimant's age, education, experience, and RFC would enable him to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if his medical impairments are per se disabling or otherwise prevent him from performing his past work and any other viable work option. *See* 20 C.F.R. § 404.1505(a).

**A. Steps One, Two, and Three.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date of March 20, 2019. (AR 878). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine without nerve root impingement, degenerative joint disease of the knees and hips, left ulnar neuropathy, obesity, anxiety disorder, posttraumatic stress disorder, bipolar disorder, major depressive disorder,

---

[1]Regulations for determining whether a claimant is disabled for both disability insurance benefits (DIB) and supplemental security income (SSI) are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 416, but the analogous regulations in Part 404 apply as well.

and neurodevelopmental disorder. *Id*. The ALJ also found the following non-severe impairments: diabetes, hypertension, obstructive sleep apnea, headaches, and costochondritis. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments meeting or equaling a listed impairment such that Plaintiff is per se disabled. *Id.*

In addition, the ALJ considered whether Plaintiff's mental impairments constituted per se disability under the "paragraph B" criteria. *See* 20 C.F.R. § 416.920a(c)(3). The ALJ must identify limitations in four broad functional areas: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* The ALJ rates any limitation as either none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). If a claimant has one extreme limitation or two marked limitations in these functional areas, they may satisfy a listed disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast a moderate impairment means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.*

The ALJ found Plaintiff had a moderate limitation in each of the four categories. (AR 879–80). In making this determination, the ALJ considered Plaintiff's numerous activities of daily living, medical records reflecting appropriate staff interactions, normal mental status examinations, treatment notes reflecting productive discussion, and absence of "more involved mental health care." (AR 879–81). The ALJ provided specific citations and explanations for her moderate limitation in each category. *Id.*

### B. RFC Assessment.

Because the ALJ determined that none of Plaintiff's impairments qualified per se as disabling, she proceeded to determine Plaintiff's RFC. (AR 881). The ALJ concluded that Plaintiff

could perform "light work," pursuant to 20 C.F.R. § 416.967(b),[2] with the following postural,
environmental, and social limitations:

> [He] is able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds
> frequently. He can sit for at least six of eight hours and stand and walk for six of
> eight hours. He can occasionally climb stairs and ramps, but should never climb
> ladders, ropes, or scaffolds. He can occasionally balance, stoop, crouch, kneel, and
> crawl. He is limited to frequent as opposed to constant handling and fingering with
> the left upper extremity. He must completely avoid unprotected heights. He is able
> to understand, remember, and carry out detailed but not complex instructions and
> make commensurate work-related decisions. He is able to maintain attention and
> concentration to perform and persist at detailed but not complex tasks at a consistent
> pace for two hours at a time without requiring redirection to task. He can have
> occasional interaction with the general public and superficial interactions with
> coworkers and supervisors. He requires work involving no more than occasional
> change in the routine work setting, and no more than occasional independent goal
> setting or planning.

*Id.* The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be
accepted as consistent with the objective medical evidence" in formulating this RFC. She then
reviewed and discussed the following evidence in light of the two-step process of first determining
the impairment and then assessing whether the impairment could reasonably produce Plaintiff's
symptoms. (AR 881–82).

1. Plaintiff's testimony and treatment history.

The ALJ first recounted Plaintiff's hearing testimony. (AR 882). Plaintiff's "very high"
PTSD and depression were his main complaints. *Id.* He stated he is unable to work and cannot be
around people because of his mental health symptoms, which make him become angry, lash out,
and startle with loud noise. *Id.* He also testified to poor concentration and memory due to sustaining
a head injury after being attacked from behind. *Id.* Plaintiff can still perform some daily activities

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing
up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg
controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do
substantially all of these activities." 20 C.F.R. § 404.1567(b).

with the help of a caregiver to assist him with household chores. *Id.* He can typically manage his own money, watch TV every day (with an attention span of 25 minutes on a bad day), and sometimes accompanied his caregiver and partner on grocery shopping outings. (AR 882, 883). Plaintiff describes "more of a mental than physical problem that stops him from working, although he does have physical problems with bending and standing." (AR 883). For example, he says he needs a cane to walk and help putting his socks on. *Id.*

Plaintiff's hips, knees, and wrists comprise his main physical impairments. (AR 882). Because of hip and knee issues, he says he cannot endure prolonged sitting or walking. *Id.* He attended physical therapy in the past, though not lately, and discussed a hip replacement before his surgeon moved. *Id.* He also describes numbness in his hand from a wrist injury and bilateral carpal tunnel syndrome. *Id.* Obesity presents challenges lying down and balancing on stairs; he endorsed high fatigue from only sleeping 4 to 5 hours per night. *Id.*

After considering Plaintiff's narrative, the ALJ determined that, while his impairments could reasonably cause his symptoms, their intensity, persistence, and limiting effects did not comport with the medical evidence. (AR 883). The ALJ noted that Plaintiff responded well to non-surgical treatment of his back, hip, and knee pain, particularly injections which Plaintiff reported were "very effective" for his hips. (AR 883–84). Examinations demonstrated normal muscle tone, strength, and gait post-treatment. (AR 883). Imaging showed moderate osteoarthritic changes in his hips and back but no acute or significant progression. *Id.* An orthopedic surgeon recommended Plaintiff continue physical therapy and injections, and a pain specialist recommended physical therapy as well. (AR 884). Insurance denied a request for hip surgery but Plaintiff underwent a laparoscopic gastrectomy as well as neurology consult for hand numbness. *Id.*

Regarding mental impairment, the ALJ documented the sequence of Plaintiff's mental health providers from 2018–2021 for treatment of chronic PTSD, major depressive disorder, sleep disorder, social phobia, and bipolar II. (AR 885). He was most recently seen by a psychiatrist for medication management and a social worker for counseling. *Id.*

Plaintiff reported positive developments at his medication management appointment on December 29, 2021. *Id.* He felt his medication (Duloxetine) was effective such that he was less depressed and anxious. *Id.* He was also "sleeping well" with fair energy and motivation levels. A mental status examination was positive with good appearance, behavior, speech, mood, affect, thought content, and attention. *Id.* Insight, judgment, and memory were fair. *Id.* His medication regime was continued, including Clonidine and Trazodone for insomnia and nightmares. *Id.* Consultative psychiatric examiner Anne Ortiz, M.D. diagnosed general anxiety disorder, PTSD, major depressive disorder, and neurodevelopmental disorder. *Id.* The ALJ summarized the mental health records as "not consistent with the level of impairment alleged by [Plaintiff] [because] at most, the records show some occasional limitations in memory and attention and some difficulties in dealing with others." *Id.*

2. <u>Medical opinions and prior administrative findings.</u>

The ALJ also considered the opinions of state agency medical consultants M.Ds. Stanley Berman and Sterling Moore and nurse practitioner Giron. (AR 886). She found Dr. Berman's opinion mostly persuasive, Dr. Moore's opinion somewhat persuasive, and nurse practitioner Giron's opinion not fully persuasive. *Id.* She discussed the evidence both for and against these opinions when making her own findings. *Id.*

The ALJ also considered the opinions of several state agency psychological consultants, Ph.Ds. Mark McGaughey and Edith King and M.D. Scott Walker. (AR 887). She noted all three

"found no more than mild limitation in any of the four B criteria and no severe mental impairment." She disagreed with their lack of assessed severe mental impairment, however, because "the record does suggest at least the presence of a barely severe impairment" shown by Plaintiff's "generally consistent utilization of mental health services." *Id.* She then discussed Dr. Ortiz's opinion and her reasons for finding it partially persuasive. *Id.*

The ALJ also discussed the August 30, 2019, opinion of psychologist Michael Mash, Ph.D., and found it not persuasive. (AR 888). Because this appeal chiefly concerns the ALJ's treatment of Dr. Mash's opinion, the Court reproduces the analysis in full:

> It is not well-supported by the medical evidence nor consistent with the record as a whole. The record does not support a finding that the claimant is unable to accept instruction or respond appropriately to criticism from supervisors, nor does it support a finding that the claimant is unable to work in coordination or proximity with others without being distracted by them. Dr. Mash's opinion is not supported by his treatment notes. For example, on March 22, 2019, the claimant told Dr. Mash his "PTSD has subsided, no more nightmares, not on high alert anymore" (B6F/16). On December 20, 2019, the claimant told Dr. Mash the holidays were hard for him and that he missed his mother (B35F/27). Dr. Mash assessed claimant's bipolar and PTSD as stable, at baseline, with significant benefit from medication. On mental status examination, the claimant was "alert, oriented, cognitive function intact, cooperative with exam, good eye contact, judgment and insight good, mood/affect full range, no auditory or visual hallucinations, speech clear, thought content without suicidal ideation or delusions, thought process logical, goal directed." Dr. Mash continued Duloxetine and Trazodone for bipolar II and PTSD. On December 4, 2020, the claimant told Dr. Mash he was "doing well, trying not to worry about the pandemic" (B35F/8). Dr. Mash's opinion is also inconsistent with other evidence, which shows claimant's mental impairments responded to counseling and medication and that he did not require emergency psychiatric care or inpatient treatment.

*Id.*

The ALJ concluded her summary of evidence by finding her RFC determination "is supported by the totality of the evidence" and shows Plaintiff has "adequate functioning" accounted for by the specific RFC limitations. *Id.*

### C. Steps Four and Five.

At step four, the ALJ determined that Plaintiff's past relevant work as a security guard was precluded by his RFC, relying on the testimony of the vocational expert. *Id.* Therefore, the ALJ proceeded to step five and concluded that Plaintiff's RFC, age, education, and work experience would allow him to perform jobs existing in significant numbers in the national economy, including material distributer, cleaner, and small products assembler. (AR 889). Based on all the above findings, the ALJ determined that Plaintiff did not have a "disability" as defined by the Social Security Act and therefore did not qualify for supplemental security income.

## IV.    <u>ANALYSIS</u>

**The ALJ Failed to Comply with the Remand Order to Properly Consider Dr. Mash's Opinion.**

### A. <u>Parties' Arguments</u>

Plaintiff alleges the ALJ failed to comply with Judge Fashing's remand mandate to properly assess Dr. Mash's opinion after she found error based on mistake of fact and lack of substantial evidence. [Doc. 13, at 8]. Plaintiff states Judge Fashing remanded "because the ALJ effectively rejected the opinion and claimed the record showed improvement of symptoms" despite evidence showing mental health decline. *Id.* Relatedly, Plaintiff notes the "mandate" also found error based on "no indication in the ALJ's decision that he considered Dr. Mash's treatment notes or other evidence in the record that supported Dr. Mash's conclusions." *Id.*

Plaintiff also challenges the ALJ's decision for lacking supportability and consistency in the way it treated Dr. Mash's opinion. Regarding consistency, Plaintiff says the ALJ erroneously failed to discuss records supporting Dr. Mash's conclusions of poor mental health and offers a litany of record citations supporting mental health stagnation or decline. *Id.* at 9, 10. Regarding supportability, Plaintiff alleges the "prior ALJ failed to make a proper connection between" Dr. Mash's opinion and explanations and treatment notes. *Id.* at 10. In essence, Plaintiff believes the

particular positive treatment records this ALJ cited—to the exclusion of records reflecting increased mental health struggles—do not paint an accurate picture. *Id.* at 11. In this regard, Plaintiff concludes the ALJ ignored the characteristic "good days and bad days" and "waxing and waning of symptoms" of mental illness. *Id.* Finally, Plaintiff argues the ALJ's statement that lack of emergency or inpatient psychiatric care undercuts Dr. Mash's opinion does not constitute substantial evidence. *Id.* at 12. Thus, Plaintiff urges that legal error remains and requires remand. *Id.* at 13.

The Commissioner contends the ALJ did follow Judge Fashing's mandate to properly assess Dr. Mash's opinion under the applicable standard in 20 C.F.R. § 416.920c. [Doc. 19, at 7]. The Commissioner explains the ALJ considered the correct year, 2019, and incorporated Dr. Mash's treatment notes. *Id.* at 7. Regarding supportability, "the ALJ explained that Dr. Mash's treatment records documented normal examination findings, medication providing Plaintiff with significant benefits, and Plaintiff reporting he was doing well, including not having nightmares anymore all of which did not support his opinion that Plaintiff had disabling mental health limitations." *Id.* at 8. Regarding consistency, the ALJ "found Dr. Mash's disabling opinion inconsistent with Plaintiff's positive results from counseling and medication and inconsistent with that level of conservative care, which controlled Plaintiff's symptoms well enough that he did not require emergency or inpatient treatment." *Id.* The Commissioner urges the lack of specific citation for this conclusion is not harmful error because "reading the ALJ's decision as a whole (as this court must), it is apparent that substantial evidence in the record supports her findings." *Id.* The Commissioner couches Plaintiff's arguments as "little more than improper requests for the court to reweigh evidence" because Plaintiff "refuses to admit that the ALJ here acknowledged some

mixed findings in the record," from which the ALJ made disability determination unfavorable to Plaintiff *Id.* at 9, 10. The Commissioner thus asks the Court to affirm. *Id.* at 10.

B. <u>Applicable Law.</u>

When a court sitting in judicial review of an agency decision issues a remand order, the administrative agency generally must "conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (internal citation omitted). Although ultimately discretionary, compliance with a reviewing court's mandate is generally obtained absent an exception such as change in controlling law. *Id.*

An ALJ must review the persuasiveness of all proffered medical opinions on a claimant's limitations and explain how they impacted the RFC assessment. *Vigil v. Colvin*, 805 F.3d at 1199, 1201–02 (10th Cir. 2015). Factors for review include the doctor's examining and treatment relationship with the claimant, the support for the opinion, its consistency with the record as a whole, the specialization of the doctor, and any other important consideration. 20 C.F.R. § 416.920c(c). The "most important factors" are supportability and consistency. *Id.* So long as the ALJ follows the required procedure, the presence of substantial evidence still supports the ALJ's decision despite the "possibility of drawing two inconsistent conclusions from the evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The ALJ need not discuss every factor so long as she adequately supports the persuasiveness that she assigns the opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not, without explanation, downplay, mischaracterize, or cherry-pick elements from a medical opinion or fail to discuss uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

C.  Application.

The Court finds the ALJ failed to properly consider Dr. Mash's opinion in accordance with the remand order. While the ALJ corrected the factual mistake in the prior decision—changing the year of Dr. Mash's assessment from 2018 to 2019— the ALJ did not resolve how that mistake substantively tainted the prior decision's treatment of Plaintiff's mental health history. Judge Fashing's order directed the ALJ to reconsider how correcting the year of Dr. Mash's assessment revealed there was *evidence* of some mental health decompensation supporting the assessment: "Given the ALJ's mistaken belief that Dr. Mash's opinion was from August 2018 rather than August 2019, and the evidence that [Plaintiff's] symptoms worsened after August 2019, the ALJ's reason for finding Dr. Mash's opinion partially persuasive is not supported by substantial evidence." (AR 985).

The ALJ did not follow the substance of the remand order to assess the trajectory of Dr. Mash's treatment notes—both positive and negative—in the correct sequential order. While the ALJ cited in a cursory manner to Dr. Mash's treatment notes to support her evaluation of the opinion, she only discussed notes demonstrating *improvement* in Plaintiff's mental health symptoms. (AR 888). The ALJ did not even acknowledge the negative mental health records Judge Fashing cited in the remand order nor explain away her discounting of the opinion. *See* (AR 98). Indeed, the instant analysis of Dr. Mash's opinion lacks any recognition much less resolution of mixed mental health findings.

In the same decision, the ALJ properly assessed state agency consultant opinions by discussing evidence bolstering and discrediting their findings, highlighting the absence of a similarly balanced analysis for Dr. Mash. *E.g.* (AR 887) ("[Dr. Ortiz's] [partially persuasive] opinion of no limitation in social interactions is supported by her findings of cooperative

13

presentation, appropriate appearance, and normal speech, but not by her findings of 'on edge' mood and restricted affect"). This leads the Court to conclude the ALJ unlawfully downplayed evidence supporting Dr. Mash's endorsement of significant limitations and cherry-picked evidence to reject those limitations. *See Clifton*, 79 F.3d at 1010. Therefore, the ALJ's assessment of Dr. Mash's opinion still lacks substantial evidence. Such insufficient analysis renders the Court unable to meaningfully review the ALJ's findings in accordance with the remand order. *See Guice v. Comm'r, SSA*, 785 F. App'x 565, 575 (10th Cir. 2019).

## V.    <u>CONCLUSION</u>

**THE MATTER IS THEREFORE REMANDED** to the agency for further proceedings to remedy the ALJ's deficient analysis of Dr. Mash's opinion and fully address Judge Fashing's remand concerns. The Court will not reach the remaining points of appeal as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**IT IS SO ORDERED.**

Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent